IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Wendi Helen Crout, | ) | Civil Action No.:  8:13-cv-01440-RBH-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and social security income ("SSI") benefits.  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On April 16, 2010, Plaintiff filed an application for DIB alleging an onset of disability date of January 11, 2010.  [R. 31, 107–109.]  Plaintiff later filed an application for SSI on July 6, 2010, likewise alleging an onset of disability date of January 11, 2010. [R. 332–336.]  Plaintiff's claims were denied initially on July 15, 2010 [R. 32, 35–38], and on reconsideration on January 18, 2011 [R. 42–43], by the Social Security Administration ("the Administration").  Plaintiff requested a hearing before an administrative law judge ("ALJ")

and on April 18, 2012, ALJ Arthur L. Conover conducted a de novo video hearing on Plaintiff's claims.   [R. 352–381.]

The ALJ issued a decision on May 21, 2012, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. *17–26*.]   At Step 1,[1] the ALJ found Plaintiff met the insured status requirements of the Act through March 31, 2014, and had not engaged in substantial gainful activity since January 11, 2010, the alleged onset date. [R. 19, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disc disease and depression.  [R. 19, Finding 3.] The ALJ also determined Plaintiff had a non-severe impairments of obesity and diabetes.   [R. 19–20.]  At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 20,  Finding 4.] The ALJ specifically considered Plaintiff's mental impairment under Listing 12.04.   [R. 20–21.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following finding with respect to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no work on rough or uneven surfaces; occasional pushing/pulling with the left leg; the need of a cane for ambulation; occasional climbing of ramps or stairs; occasional stooping and crouching; no climbing of ladders, ropes or scaffolds; no kneeling or crawling; avoidance of all exposure to vibration, heights, and dangerous machinery; and because of pain, side effects of medication and depression, she would be restricted to routine, simple work.

---

[1]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

[R. 21, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work as a nursery school attendant and cashier.  [R. 24, Finding 6.]  Considering the Plaintiff's age, education, work experience, and residual functional capacity, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [R. 24, Finding 10.] Consequently, the ALJ concluded Plaintiff has not been under a disability, as defined by the Act, from January 11, 2010, through the date of the decision.  [R. 25, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. *1–6.*]  Plaintiff filed this action for judicial review on May 29, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and claims the ALJ erred by

(1)    failing to ask the vocational expert ("VE") if the vocational testimony was consistent with the Dictionary of Occupational Titles ("DOT") and by failing to obtain reasonable explanations for the apparent conflicts [Doc. 13 at 5–7]; and,

(2)    failing to properly consider the combined effects of Plaintiff's severe and non-severe impairments [*id.* at 7–9].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

(1)    properly determined that the VE's testimony was consistent with the DOT [Doc. 14 at 7–8]; and

(2)    properly considered Plaintiff's impairments in combination [*id.* at 8–10].

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.  [*Id*. at 11.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See,*

5

*e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

6

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of*

8

*Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step

five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the

national economy that the claimant can perform, considering the claimant's age, education,

and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can

find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§

404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant

physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for

pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an

individual has earnings from employment or self-employment above a specific level set out

in the regulations, he is generally presumed to be able to engage in substantial gainful

activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform

basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider

the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B),

1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not

in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889

F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[3]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.     *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind

---

[3]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

[Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

12

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.    20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).    The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).    Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.    *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.    *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because

13

"it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

15

Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Impairments in Combination**

The ALJ found that Plaintiff had two severe impairments, degenerative disk disease and depression, and one non-severe impairment, diabetes.  The ALJ concluded that Plaintiff's obesity had no significant effect on her functioning, and therefore it was neither severe or non-severe.  Plaintiff argues the ALJ erred because he failed to discuss how her

"pain and her obesity affected her depression." [Doc. 13 at 7.] Additionally, Plaintiff argues that, by combining Plaintiff's multiple back impairments into a generic "degenerative disc disease" impairment, the ALJ did not consider the combined effects of her many different back impairments. [*Id.* at 8.] Plaintiff contends that one such reasonable combined effect would be that Plaintiff's weight aggravated her spondylosis and her L5 nerve irritation; another would be that her pain increased the adverse effects of her depression. [*Id*. at 8–9.]

### *ALJ's Decision*

As noted, in his decision, the ALJ noted Plaintiff's severe impairments of lumbar degenerative disc disease and depression, as well as her non-severe impairment of diabetes mellitus. [R. 19–20.] The ALJ also noted that Plaintiff was obese but that "[t]here is no evidence that her obesity has caused any significant affect on her functioning. Therefore, I do not find that the claimant's obesity is a "severe" impairment." [R. 19.] In analyzing Plaintiff's impairments at Step 2, the ALJ determined that Plaintiff's severe impairments did not meet the criteria of any listing impairment and that Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04. [R. 20–21.] Specifically, the ALJ found that Plaintiff was mildly restricted in her activities of daily living and social functioning; had moderate difficulties with regard to her concentration, persistence or pace; and had not experienced episodes of decompensation.  [R. 20.]

In analyzing Plaintiff's RFC, the ALJ further addressed Plaintiff's physical impairments as follows:

> Dr. Steven Storick evaluated the claimant on March 9, 2010 secondary to low back and leg pain. There was a prior L5-S1 diskectomy in October 2007 with significant relief in her symptoms. She reported a fall in January 2010

and an MRI demonstrated post-operative changes at the L5-S1 level with no residual or recurrent disc herniation identified. There was also diffuse disc bulge at L4-L5 but the exiting nerve roots did not appear compressed and the changes were slightly more advanced on the right as opposed to the left (Exhibit 2F). Dr. Storiek noted the claimant complained of intermittent numbness and tingling in the extremities as well as subjective left leg weakness. The claimant indicated she had used a cane to aide in ambulation. She reported the pain worsened with walking, sitting and standing and decreased slightly by lying supine and with ice application. She denied any post-surgical injections or post-surgical physical therapy. She was on prescribed Vicodin. She tried stretching but was not on a structured program. Physical examination revealed the claimant was 5 feet 3 inches tall and weighed 223 pounds. She was alert and oriented times three in no acute distress. She responded appropriately to questions and commands and her speech was clear and well organized. Musculoskeletal examination revealed the lumbar spine was aligned with no visual deformity. There was mild tenderness along the lumbar processes and previous surgical site. There was tenderness along the paraspinals and no deformity in the SI joints. Hip compression was negative and forward flexion at the wai[st] brought the fingertips just to the knees. Hyperextension was restricted and painful; however, motor strength was 5/5 on the right lower extremity with left leg weakness; however, this could be pain on resistance and no true decreased motor strength. Sensation to light touch was slightly decreased on the left lateral foot and straight leg raising sitting was negative on the right and positive on the left for pain in the thigh and low back. Deep tendon reflexes were 2+ and symmetrical. She had an antalgic gait and favored the left side.

Clinical assessment was lumbar spondylosis, history of left L5-S1 diskectomy and low back and leg pain worse on the left. Nerve conduction studies performed on March 31, 2010 (Exhibit 4F), were only mildly abnormal suggestive of left L5 nerve root irritation and showed no evidence of diabetic neuropathy-of the left lower extremity. The claimant returned to Dr. Storick on May 24, 2011, secondary to her treatment for chronic back and left leg pain. EMG studies had been consistent with L5 radiculopathy and the claimant indicated that her symptoms remained the same. She was asymptomatic in the right leg and denied any specific motor loss or sphincter dysfunction. The records reflected she was a diabetic and blood sugars were typically 120-150. Physical examination demonstrated the claimant used a cane for support with no obvious foot drop and favored her left leg. Motor function was 5/5 and there was decreased sensation to light touch along the medial and lateral aspect of the left foot compared to the right. Straight leg raising was negative in the seated position and she complained of some low back pain with straight leg raising on the left. Deep tendon reflexes remained at 2+ and equal and there was full range of motion of the lower extremities with no tenderness noted. There was no pain elicited in range of motion of

19

either hip. Dr. Storick's clinical assessment was chronic low back and left leg pain; left lumbosacral radiculitis and status post left L5-S1 diskectomy. Dr. Storiek recommended the claimant restart Neurontin. The claimant also inquired about Social Security Disability and Dr. Storick indicated he would provide records, but had no effect on the outcome of the decision (Exhibits 3F and 12F).

Records from Dr. Randall Drye demonstrated the claimant was seen on January 15, 2010, and reportedly had done quite well from her previous back surgery in October 2007. She reported some recurrent leg symptoms, but most of her pain was mechanical in nature. Dr. Orye noted an MRI was reassuring with postoperative changes as expected but no additional pathologic disc herniations, etc. Dr. Drye indicated the claimant received physical therapy and made some improvement (Exhibit 5F). She complained of falls and left leg pain. Physical examination by Dr. Drye revealed there was somewhat of an exaggerated response because of pain. Her leg was unable to be lifted beyond 20 degrees in seated position and reported decreased sensation over the anterior thigh and leg on the left relative to the right. She had very poor effort in terms of strength with generalized weakness throughout the left leg. Her reflexes were however symmetric at the knees and ankles. An MRI was reviewed an Dr. Drye reiterated that there was no obvious pathology that would respond to surgery and was concerned that her symptoms were much more diffuse and widespread than could easily be explained by MRI findings. Dr. Drye recommended no surgery was reasonable and there not much to offer. Dr. Drye evaluated the claimant on May 3, 2010, following EMG studies (Exhibit 4F) which showed no evidence of neuropathy. Dr. Drye was of the opinion there was no evidence of any convincing pathology that would be amenable to surgery and that the claimant would best be managed by pain management. She was advised on follow-up with Dr. Storick (Exhibit 6F).

[R. 21–23.]

### Discussion

When dealing with a claimant with more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted).  This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." *Id.* (*citing Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir.1985)).

Courts in this district have found the ALJ's discussion and analysis adequate where a reading of the decision as a whole makes clear that the ALJ considered the combination of impairments. *See Brown v. Astrue*, 2012 WL 3716792 (D.S.C. Aug. 28, 2012),(holding the decision as a whole makes clear that the Commissioner considered the combined effect of a claimant's impairments; *Thornsberry v. Astrue*, 2010 WL 146483 *5 (D.S.C. Jan.12, 2010) (finding "while the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments.").

Upon consideration, the Court notes that Plaintiff has failed to present evidence that the combined effects of her impairments would equal any Listing.  Additionally, the Plaintiff has failed to describe any limitations that were not addressed by the ALJ due to his decision to lump all of Plaintiff's back ailments under the label degenerative disc disease. The United States Supreme Court has stated, "[f]or a claimant to quality for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)(*quoting* 20 C.F.R. § 416.926(a)).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. In other words, the combination of impairments does not meet a Listing simply by virtue of the overall functional impact of those impairments.  The Plaintiff must still demonstrate how the impairments, when taken together, meet the specific criteria of the Listing in question.

Further, even if the ALJ did not properly consider evidence of Plaintiff's obesity and back impairments in concert with her depression, Plaintiff has made no attempt to demonstrate how such consideration would have satisfied the criteria of Listing 1.04 (Disorders of the Spine) or Listing 1.01 (Impairments Musculoskeletal).  Instead, Plaintiff argues that her overall functional level was substantially diminished by the combination of such impairments and asks the Court to weigh the evidence to find other reasonable conclusions. [*See* Doc. 13 at 8 ("One such combined effect reasonably would be Plaintiff's weight aggravated her spondylosis and her L5 nerve irritation.")]   Such fact finding, however, is beyond the purview of this Court's review.  By reading the ALJ's decision, it is clear the ALJ considered the effect of Plaintiff's impairments in combination.  Thus, while the ALJ could have provided a more succinct explanation of his consideration of Plaintiff's impairments in combination, any error of the ALJ in considering or explaining the combined effects of Plaintiff's impairments is harmless, in the absence of evidence that the outcome would have been different. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994).

**Vocational Expert Testimony**

Plaintiff also contends the ALJ erred by failing to comply with the requirements of Social Security Ruling ("SSR") 00-4p by failing to properly question the VE concerning whether the VE's testimony was consistent with the DOT.  [Doc. 13 at 5.]  Specifically, Plaintiff argues that, while the VE confirmed that her testimony regarding skill and exertional levels is consistent with the DOT, she failed to explain the qualification of her answer that her testimony was consistent "[e]xcept where it's specified in the past relevant work." [*Id.*]  Additionally, Plaintiff contends the ALJ's "limitations regarding the need to use

22

a cane for ambulation, the need for a sit/stand option, and the limitation on the use of one

lower extremity (Plaintiff's left leg) to only occasional pushing and pulling are not addressed

in the Dictionary of Occupational Titles (DOT)" and the VE's testimony contains no

explanation regarding these conflicts.   [*Id.* at 6.]

On the other hand, the Commissioner argues that, in qualifying her response, the

VE was "simply noting, for the second time, that Plaintiff's past relevant work as a cashier

was not consistent with the DOT" in that Plaintiff performed the job at a medium exertion

level and the DOT described it as light. [Doc. 14 at 7.]   Further, the Commissioner

contends that the  VE "explained that, if Plaintiff required a cane, it would reduce the job

numbers by about half, based on [her] professional experience" and further "explained [her]

testimony and how and why it differed from the [DOT]." [*Id.* at 8.] Additionally, the

Commissioner suggests that the Plaintiff misread the record and that the "ALJ did not

include a sit/stand option in the residual functional capacity or the main hypothetical

question to the vocational expert" and, thus, Plaintiff's argument does not apply. [*Id.*]

SSR 00–04p provides in pertinent part:

Occupational evidence provided by a VE or VS generally should be
consistent with the occupational information supplied by the DOT.  When
there is an apparent unresolved conflict between VE or VS evidence and the
DOT, the adjudicator must elicit a reasonable explanation for the conflict
before relying on the VE or VS evidence to support a determination or
decision about whether the claimant is disabled. At the hearings level, as
part of the adjudicator's duty to fully develop the record, the adjudicator will
inquire, on the record, as to whether or not there is such consistency.
Neither the DOT nor the VE or VS evidence automatically "trumps" when
there is a conflict. The adjudicator must resolve the conflict by determining
if the explanation given by the VE or VS is reasonable and provides a basis
for relying on the VE or VS testimony rather than on the DOT information.

SSR 00–4p, 2000 WL 1898704. The Ruling further provides that

[r]easonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

*Id.*

### *VE's Hearing Testimony*

The colloquy between the ALJ and the VE, Ms. Sanders, regarding the availability of work Plaintiff could perform went as follows:

*ALJ*:    All right. I want you to consider a younger individual, Ms. Sanders, with a GED, first hypothetical would put this person at a range of light exertion as defined by Social Security. In addition, this person should not be engaged in work on rough or uneven surfaces, with only occasional pushing or pulling with her left leg. No climbing of ladders, ropes or scaffolds, no kneeling or crawling. She can, on occasion, climb ramps and stairs, stoop and crouch. She needs to avoid work around vibration. No work around heights, dangerous machinery. I think, based on the testimony and the testing in the file, I will indicate the person would need a cane to ambulate.

She does suffer from a degree of pain, side effects of medication and depression, would result in a range of routine, simple work. Do those combination of limitations rule out past work in your opinion, Ms. Sanders?

*VE*:    Yes, Your Honor.

*ALJ*:    Is there other work existing in the regional or national economy that person can perform?

*VE*:    There is some examples. There are entry-level office assistants, DOT 239.567-010, 6,400 South Carolina, 433,000, United States.

*ALJ*:    That's unskilled, ma'am?

*VE*:    [inaudible] answering clerk.   DOT 237.367-010, 2,600 South Carolina, 97,000 United States.  Ticket clerk, one-half range to exclude walking. These are people that would have a bench, sit/stand option.  DOT 211.467 030, 50 percent in South Carolina equals 2,011; and 34,000 United States. Three examples, light exertion, SVP-2, entry-level unskilled.

. . .

*ALJ*:    Okay. Do those jobs allow a person to alternate sitting and standing? I know you indicated the last one was reduced.

*VE*:    The ticket clerk would, yes; they would all allow a person to alternate sitting and standing, depending on the frequency it took them off task.

*ALJ*:    Okay. Would you have to reduce those other ones if I indicated the person had to do that on a regular basis, say, every 30 to 40 minutes?

*VE*:    I might decrease the range by 25 percent again, giving the same DOTs, but just to allow for some sort of intense expectation that they would not do that by the employer.

*ALJ*:    Okay. Testimony regarding skill and exertional levels consistent with the DOT, ma'am?

*VE*:    Yes, Your Honor. Except where it's specified in the past relevant work.

[R. 377–379.]

Counsel for Plaintiff ("Atty") then proceeded to question the VE about how a sit/stand option and the addition of a requirement to lay down twice and day, on an unscheduled basis, for about 15 minutes, would effect the jobs cited as being available. [R. 379.] The VE testified as follows:

25

*VE*:  If it's twice a day for 15 minutes, it's possible that, that could be accommodated as a break, so that would have to be an agreement they provided and so forth.

*Atty*:  Okay. With regard to your ticket clerk position, the 50 percent, is there --is that a Department of Labor publication that breaks it down to 50 percent or is that just your swag  [PHONETIC]?

*VE*:  The DOT makes no distinction of sitting and standing, Counsel.  I have, for 20 years, and in four different states routinely observed the three examples that I have gave and have placed people in those jobs. Those were three that I collected, because there were accommodations for repeated sitting, standing. They are widely known, you know, in job analysis to be flexible in that way.

*Atty*:  That wasn't the question I asked you, Ms. Sanders. Did the number you arrived at, the 50 percent, was that just based on your experience and your 20 years and that, correct?

*VE:*  That's what I said.

[R. 380.]

**Discussion**

Fourth Circuit has adopted the rule set out in *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir.1999) adopting SSR 00-4p and holding "that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of non-disability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point."  *See Gull v. Barnhart*, 2006 WL 1982769, at *9 (W.D.Va. July 14, 2006).  In applying this rule to the present facts, the Court finds no error in the ALJ's reliance on the VE's testimony, or in the ALJ's finding that the VE's testimony was consistent with the DOT.

As an initial matter, the ALJ posed a hypothetical to the VE that accounted for all of Plaintiff's credible limitations and the VE, upon considering these limitations, found that Plaintiff could perform multiple jobs.  After providing an adequate hypothetical, the ALJ asked the VE, and the VE confirmed, that her testimony regarding the skill and exertional levels of the jobs that Plaintiff could perform was consistent with the DOT.  The ALJ met his duty to provided a proper hypothetical and to inquire regarding the consistency of the VE's testimony with the DOT; accordingly, the ALJ was entitled to rely on the VE's testimony.  *See Walker*, 889 F.2d at 50; *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir.1992) (stating that testimony elicited by hypotheticals adequately relating all of claimant's impairments may constitute substantial evidence to support the ALJ's decision).

While Plaintiff takes issue with the VE's failure to testify regarding whether a sit/stand option was consistent with the DOT, the ALJ did not include a sit/stand option in the RFC.  Thus, any failure to explain the consistency of the sit/stand option with the DOT is of no moment since such a limitation as not included in the RFC.  Accordingly, the Court finds no error in the ALJ's reliance on the VE's testimony.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


July 24, 2014                                  s/Jacquelyn D. Austin
Greenville, South Carolina               United States Magistrate Judge